IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
R.S., by and through his father,  )
RONALD E. SOLTES,                 )
                                  )
            Plaintiff,            )
                                  )
        v.                        )     1:16cv119
                                  )
BOARD OF DIRECTORS OF WOODS       )
CHARTER SCHOOL COMPANY, et al.,   )
                                  )
            Defendants.           )
```

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the parties' proposed discovery plans. (See Docket Entries 12, 15.) In his proposal, Plaintiff seeks discovery of the electronically stored information (the "ESI Discovery") of Defendant Woods Charter School ("Defendant WCS"). (See Docket Entry 15 at 1.)[1] Defendant WCS and Defendant Board of Directors of Woods Charter School Company (collectively, the "Defendants") oppose such discovery. (See Docket Entry 12 at

---

[1] Specifically, Plaintiff requests permission to conduct discovery of the "metadata" associated with the electronic documents that Defendant WCS previously produced to Plaintiff in PDF format. (See Docket Entry 16 at 4, 8 (alleging that Defendant WCS produced thousands of documents to Plaintiff in PDF format, that "[n]one of [Defendant] WCS'[s] production was produced in native format and therefore no metadata was produced to Plaintiff," and that, "[b]y providing all discovery in PDF format, [Defendant] WCS ensured that [Plaintiff] would not have access to any of the metadata embedded in the original emails and documents"); Docket Entry 18 at 3 (requesting leave to conduct further electronic discovery and providing proposed "Procedures & Protocol to be implemented in the production of electronic documents previously directed to Defendant [WCS]").)

1 ("propos[ing] that no discovery is needed").) For the reasons that follow, the Court will deny Plaintiff's request for ESI Discovery.

**STATUTORY BACKGROUND**

This case involves claims under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"). (See Docket Entry 1 at 2.) The IDEA and its accompanying regulations, 34 C.F.R. § 300 et seq., oblige all states that receive federal funds for education to provide a "free appropriate public education" ("FAPE") to each child with a disability. 20 U.S.C. § 1412(a)(1)(A); see also 34 C.F.R. § 300.101(a). "The FAPE guaranteed by the IDEA must provide a disabled child with meaningful access to the educational process." Y.B. v. Board of Educ. of Prince George's Cty., 895 F. Supp. 2d 689, 692 (D. Md. 2012) (citing Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 192 (1982)).

"To assure delivery of a FAPE, the IDEA requires a school district to provide an appropriate Individualized Education Program ('IEP') for each child determined to be learning disabled." Id. at 693 (citing 20 U.S.C. § 1414(d)). If the child's parents deem the provided IEP unsatisfactory, they may present complaints "with respect to any matter related to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). Upon lodging those

complaints, the parents may further seek a due process hearing conducted by the state or local educational agency. 20 U.S.C. § 1415(f).

In North Carolina, the Office of Administrative Hearings (the "OAH") conducts the due process hearing (the "OAH Hearing"). N.C. Gen. Stat. § 115C-109.6(a). Litigants before the OAH may utilize any means of discovery available pursuant to the North Carolina Rules of Civil Procedure, N.C. Gen. Stat. § 1A-1 (the "N.C. Rules"). See N.C. Gen. Stat. § 150B-28 (discussing permitted discovery in North Carolina administrative hearings, and stating that "[p]arties in contested cases may engage in discovery pursuant to the provisions of the [N.C. Rules]"). An administrative law judge (the "ALJ") resolves discovery disputes, presides over the OAH Hearing, and issues a final determination. See N.C. Gen. Stat. §§ 150B-33, 150B-34(a).

After the ALJ's issuance of a final determination, any aggrieved party may "fil[e] a written notice of appeal with the person designated by the State Board [of Education]." N.C. Gen. Stat. § 115C-109.9(a). The State Board of Education then appoints a State Review Officer (the "SRO") to conduct an impartial review of the ALJ's decision. Id. A dissatisfied party may then challenge the SRO's decision in either state or federal court. See N.C. Gen. Stat. § 115C-109.9(d); 20 U.S.C. § 1415(i)(2)(A).

**PROCEDURAL HISTORY**

At Plaintiff's request, an OAH Hearing and related proceedings (the "OAH Proceeding") took place to address Plaintiff's allegations that Defendant WCS denied him a FAPE pursuant to the IDEA and "concomitant provisions of North Carolina law applicable to the education of children with disabilities, N.C. Gen. Stat. § 115C-106.1 *et seq.*" (Docket Entry 1 at 2); specifically, Plaintiff and Defendant WCS engaged in written discovery, conducted numerous depositions, filed multiple discovery motions, and obtained rulings on those motions from the Honorable Sidney S. Eagles, Jr., the ALJ who presided over the OAH Proceeding ("ALJ Eagles") (see, e.g., Docket Entry 17-1 (providing copy of ALJ Eagles's discovery order resolving six discovery motions, noting occurrence of seven prior depositions, and establishing deposition schedule for remaining witnesses). (See also Docket Entry 12 at 1 ("Th[e OAH P]roceeding included a full discovery process including written discovery, depositions, multiple discovery motions and rulings on those motions."); Docket Entry 16 at 5 ("[ALJ Eagles] presided over a 14-day administrative due process hearing in th[is] matter.").)

Upon the close of discovery, ALJ Eagles conducted the OAH Hearing and issued a final decision, "finding in favor of [Plaintiff] and against [Defendant] WCS on all issues." (Docket Entry 16 at 5.) Defendant WCS appealed, and an SRO issued an

-4-

opinion "affirming in part, but mostly reversing" ALJ Eagles. (Id.) Plaintiff then filed his Complaint (Docket Entry 1) in this Court against Defendants and "Does 1 to 10" (id. at 1), seeking review of the SRO's decision (see id. at 34-47).

The Complaint alleges that the SRO erred in reversing ALJ Eagles's decision, by, inter alia:

> 1. "appl[ying] the wrong standard of review" (id., ¶ 116);
>
> 2. "determin[ing] that ALJ Eagles'[s] findings were not regularly made and not entitled to be considered prima facie correct" (id., ¶ 117);
>
> 3. failing to "make sufficient citations of the record to support his findings" (id., ¶ 118);
>
> 4. "unilaterally decid[ing] which issues he was going to review, reformulat[ing] the issues and . . . add[ing] an additional issue that was not raised by either party" (id., ¶ 119);
>
> 5. incorrectly applying the statute of limitations for IDEA violations (id., ¶ 120);
>
> 6. "finding that [Defendant] WCS consulted with [Plaintiff's p]arents regarding comparable services" (id., ¶ 122);
>
> 7. failing to afford ALJ Eagles's credibility determinations appropriate deference (id., ¶ 126);
>
> 8. finding that Defendant WCS provided services comparable to that in Plaintiff's previously issued IEP (id., ¶ 128);
>
> 9. finding that Defendant WCS's holding an IEP meeting without Plaintiff's parents did not violate the IDEA (id., ¶ 129);

> 10. finding that Plaintiff's parents "were not denied the opportunity to participate in the development of [Plaintiff's] IEP" (id., ¶ 132);
>
> 11. finding that Plaintiff did not "lose educational opportunity" when "[Defendant] WCS violated the IDEA by changing [Plaintiff]'s placement without first providing prior written notice to [Plaintiff's p]arents" (id., ¶ 134);
>
> 12. "determin[ing] that [Defendant] WCS did not have to hold a manifestation determination prior to changing [Plaintiff]'s placement" (id., ¶ 135);
>
> 13. "misappl[ying] and substitut[ing] his own version of the law to hold that any award of compensatory education should be reduced due to [Plaintiff's p]arent's failure to provide ten (10) days' notice that they were enrolling [Plaintiff] in home school" (id., ¶ 137); and
>
> 14. "finding that [Plaintiff's p]arents were afforded the right to meaningfully participate in the process of providing FAPE to [Plaintiff]" (id., ¶ 138).

Defendants answered (Docket Entry 8), and the parties filed their opposing discovery proposals (Docket Entries 12, 15). The Court held an initial pretrial conference on the opposing discovery proposals and, at its conclusion, "instructed [Plaintiff] to file a twenty (20) page brief no later than September 19, 2016, that identifies exactly what discovery [P]laintiff wants to do, etc." (Minute Entry dated Aug. 29, 2016.) After Plaintiff made his

filing (Docket Entry 16),[2] Defendants responded (Docket Entry 17), and Plaintiff replied (Docket Entry 18).

## **ANALYSIS**

The IDEA provides that a federal court reviewing a state administrative decision "(i) shall receive the records of the administrative proceedings; (ii) shall hear <u>additional evidence</u> at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C) (emphasis added).  Because the IDEA authorizes courts to hear only "additional evidence" to supplement the administrative record, the scope of discovery in IDEA cases remains limited.  See <u>Rodriguez v. Independent Sch. Dist. of Boise City, No. 1</u>, No. 1:12-CV-390, 2013 WL 943838, at *3 (D. Idaho Mar. 11, 2013) (concluding that "limited discovery is available" in IDEA cases).  "The party seeking discovery must identify for the district court the particular discovery sought, how the discovery is directly relevant to the specific issue or issues raised in the complaint challenging the [SRO's] decision, and how the discovery is neither cumulative nor duplicative of the evidence introduced in the administrative

---

[2] Plaintiff filed his brief late.  (<u>See</u> Docket Entry 16 (filed September 20, 2016).)  Plaintiff has not requested permission to file a late brief.  (<u>See</u> Docket Entries dated Aug. 29, 2016, to present).)  The Court nonetheless has considered Plaintiff's brief and related filings.

-7-

proceedings." Id. at *1.  The relevance of a discovery request turns on whether the discovery could lead to the disclosure of "additional evidence" that a party could use to supplement the administrative record.  See id. at *4 ("'To prepare for presenting supplemental evidence, discovery may be undertaken as in any other civil case.  Its scope is limited to the type of evidence which a court has no discretion to admit at trial.  Discovery must relate to matters that are relevant to the review.'" (quoting James A. Rapp, Education Law, 4-10C § 10C.12 (2012))); see also id. at *4 n.1 (noting that, when a party seeks to compel discovery in an IDEA case, that party must "explain why supplementation is necessary," and that the recognized categories of "additional evidence" provide "a good starting point" for that explanation).

To avoid undermining the administrative proceeding, the United States Court of Appeals for the Fourth Circuit has construed the term "additional evidence" narrowly.  Springer v. Fairfax Cty. Sch. Bd., 134 F.3d 659, 667 (4th Cir. 1998).  In Springer, the Fourth Circuit explained that "[a] lax interpretation of 'additional evidence' would reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the [IDEA]'s judicial review mechanism into an unrestricted trial *de novo*."  Id. (internal quotation marks omitted).  The Springer Court further explained that "[a] lenient standard for additional evidence would [thus] have the consequence of making the whole IDEA

-8-

process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case." Id. The Springer Court therefore reasoned that the exclusion of evidence available during the administrative proceeding "properly encourages thorough administrative review of special education disputes," "facilitates the resolution of these disputes sooner rather than later," and "advances the aims of Congress in [IDEA]." Id. (affirming district court's decision not to admit witness's testimony as "additional evidence" under 20 U.S.C. § 1415 because the witness remained available to testify during the administrative process).

Pursuant to this reasoning, courts routinely limit the introduction of "additional evidence" to address circumstances that remained beyond a party's control during the administrative proceeding, such as: (1) "unavailability of a witness," Y.B., 895 F. Supp. 2d at 703 (internal quotation marks omitted), (2) "evidence concerning relevant events occurring subsequent to the administrative hearing," id. (internal quotation marks omitted), (3) evidence that "the requesting party could not have, by due diligence, discovered . . . in time to offer it at the administrative hearing," Brandon H. ex rel. Richard H. v. Kennewick Sch. Dist. No. 17, 82 F. Supp. 2d 1174, 1179 (E.D. Wash. 2000), (4) "evidence [that] was improperly excluded from the administrative hearing," id., or (5) "evidence [that] is needed to repair gaps in

-9-

the administrative transcript caused by mechanical failure," id.; see also Town of Burlington v. Department of Educ. for Com. of Mass., 736 F.2d 773, 790 (1st Cir. 1984) ("The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing."), aff'd sub nom., School Comm. of the Town of Burlington, Mass. v. Department of Educ. for Com. of Mass., 471 U.S. 359 (1985). "The requesting party bears the threshold burden of demonstrating that the supplemental evidence should be admitted on these bases." Y.B., 895 F. Supp. 2d at 703. Ultimately, the district court possesses discretion "to limit the introduction of 'additional evidence' under the IDEA." Schaffer ex rel. Schaffer v. Weast, 554 F.3d 470, 476 (4th Cir. 2009).

In this case, Plaintiff fails to identify the direct relevance of the ESI Discovery to the specific issues raised in the Complaint challenging the SRO's decision, or how the ESI Discovery could lead to the disclosure of "additional evidence" that he could use to supplement the administrative record. With regard to relevance, Plaintiff has not shown that the ESI Discovery qualifies as directly relevant to the specific issues raised in the Complaint challenging the SRO's decision. (See Docket Entries 15, 16, 18.)

-10-

Case 1:16-cv-00119-TDS-LPA   Document 19   Filed 01/24/17   Page 10 of 15

For instance, Plaintiff does not allege that the ESI Discovery will prove that the SRO applied the wrong standard of review, gave insufficient weight to ALJ Eagles's findings of fact, failed to sufficiently cite to the record, or misapplied the statute of limitations for IDEA violations. (See Docket Entries 15, 16, 18.) Instead, Plaintiff presents the conclusory contention that he needs the ESI Discovery "[i]n order to successfully obtain an [o]rder reversing the [d]ecision of the [SRO], and reinstating [ALJ Eagles's d]ecision." (Docket Entry 16 at 8.)

Plaintiff also has not identified how the ESI Discovery could lead to the disclosure of "additional evidence" to supplement the administrative record. For example, Plaintiff has not established that the ESI Discovery involves the testimony of witnesses that remained unavailable during the OAH Proceeding, relevant events that occurred after the OAH Proceeding, evidence that the ALJ improperly excluded from the OAH Hearing, or evidence necessary to repair gaps in the OAH Hearing transcript caused by mechanical failure. (See, e.g., Docket Entry 16 at 8 (contending that Plaintiff needs the ESI Discovery in order to have access to specific categories of information, but providing no explanation for how that information could qualify as "additional evidence").)

Likewise, Plaintiff has not established that the ESI Discovery will lead to the disclosure of evidence that he could not have, with due diligence, obtained in time to offer at the OAH Hearing.

-11-

In that regard, Plaintiff and Defendant WCS engaged in extensive discovery in the OAH Proceeding. (See, e.g., id. at 4 (noting that Defendant WCS produced 8,839 documents during the OAH Proceeding); Docket Entry 17-1 (providing copy of ALJ Eagles's discovery order resolving six discovery motions).) That discovery included Plaintiff's "First Set of Interrogatories and Requests for Production of Documents and Things" (Docket Entry 16-1 at 8) (the "First Production Request") in which Plaintiff originally requested the ESI Discovery.[3]

Plaintiff then pursued the First Production Request with a "Motion to Compel Further Production of Documents" (Docket Entry 17-2) (the "Motion to Compel"), but did not specifically seek to compel production of the ESI Discovery. In other words, Plaintiff knew about the ESI Discovery prior to the OAH Hearing, but chose not to pursue its production in the OAH Proceeding (through the Motion to Compel or otherwise); as a result, Plaintiff cannot show the requisite due diligence. See generally E.C. v. Lewisville Indep. Sch. Dist., No. 4:11-CV-56, 2012 WL 1070131, at *2 (E.D.

---

[3] Plaintiff does not dispute that the First Production Request included a request for the ESI Discovery. (See, e.g., Docket Entry 16 at 4 ("None of [Defendant] WCS'[s] production was produced in native format and therefore no metadata was produced to Plaintiff as requested in [Plaintiff]'s First [Production Request]."); see also Docket Entry 16-1 at 14, ¶ 27 (providing copy of the First Production Request, which sought "[a]ny metadata associated with the [requested] documents which are stored in an electronic format").)

-12-

Tex. Mar. 29, 2012) ("Section 1415's requirement that the [c]ourt consider additional evidence upon the request of a party does not apply to any evidence that was available or readily discoverable at the time of the administrative hearing.").

Plaintiff has contended that certain OAH Hearing testimony and the redacted nature of Defendant WCS's production of documents in response to the First Production Request suggest that Defendant WCS failed to produce all responsive materials. (Docket Entry 16 at 4, 7-8.) However, if Plaintiff harbored such suspicions, he could have pursued those matters with ALJ Eagles with a proper pre-OAH Hearing motion or during the OAH Hearing. For instance, through the Motion to Compel, Plaintiff obtained an order from ALJ Eagles requiring Defendant WCS to produce additional documents responsive to his discovery requests. (See Docket Entry 17-1 at 5-6.)[4] Put another way, Plaintiff knew that ALJ Eagles could (and would) resolve discovery disputes, but Plaintiff opted against pursuing any such relief as to the ESI Discovery. Moreover, Plaintiff has

---

[4] Indeed, during the OAH Hearing, Plaintiff sought and obtained the production of additional emails from an employee of Defendant WCS, whose testimony, Plaintiff asserts, raised questions about the completeness of his previous production. In particular, Plaintiff's counsel questioned Defendant WCS's employee, Bryan Matthews, at length about his emails, and requested that he provide additional copies of all emails from his personal email account relating to Plaintiff. (Docket Entry 17 at 6; see also Docket Entry 17-4 at 2-4, 13-18 (OAH Hearing transcript).) "Mr. Matthews agreed to do so and [ALJ] Eagles provided further directions for having those emails delivered to Plaintiff's counsel." (Docket Entry 17 at 6; see also Docket Entry 17-4 at 14, 17-18.)

offered no explanation for not raising any issue regarding the ESI Discovery during the OAH Proceeding. (See, e.g., Docket Entry 16.)

In sum, Plaintiff's failure to raise objections during the OAH Proceeding regarding the ESI Discovery precludes a finding that Plaintiff could not have, with due diligence, discovered the ESI Discovery in time to offer it at the OAH Hearing. See Johnson ex rel. Johnson v. Olathe Dist. Sch., 212 F.R.D. 582, 586 (D. Kan. 2003) (declining to permit discovery of certain documents available before the administrative hearing); see also Brandon H. ex rel. Richard H., 82 F. Supp. 2d at 1183 (declining to admit additional evidence that remained available to the plaintiff at the administrative level where the plaintiff "failed to show that he could not have, by due diligence, discovered the information in time to offer it at the [administrative] hearing").

Under these circumstances, the Court concludes that Plaintiff has not satisfied the standards for obtaining discovery.

## **CONCLUSION**

Plaintiff has not established that the ESI Discovery qualifies as directly relevant to the grounds upon which he challenges the SRO's decision. In addition, Plaintiff has not met any of the criteria for pursuing discovery of "additional evidence" in this IDEA suit.

**IT IS THEREFORE ORDERED** that Plaintiff's request to conduct ESI Discovery is **DENIED**.

**IT IS FURTHER ORDERED** that the parties promptly consult regarding the future course of proceedings in this case and, on or before February 14, 2017, file a joint report setting out their shared or differing views about a schedule for conducting mediation, as well as filing the administrative record and dispositive motions.

**IT IS FURTHER ORDERED** that Defendants' Rule 26(f) Report (Docket Entry 12) and Plaintiff's Rule 26(f) Report (Docket Entry 15) are **TERMINATED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 24, 2017